UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                      Case No. 06-cr-20411

CLARENCE JACKSON,

          Defendant.
                                      /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Pending before the court is Defendant Clarence Jackson's motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 343.) The motion has been fully briefed[1], and the court finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(1)–(2). For the reasons stated below, the court will deny the motion.

## I.   BACKGROUND

The factual background of this case embraces behavior that is among the most violent and egregious of recent memory. On September 16, 2009, Defendant pleaded guilty to two crimes: Count 1, Conspiracy to Possess with Intent to Distribute and Distribution of Cocaine, 21 U.S.C. § 841(a)(1) and 846; and Count 2, Killing a Person While Engaged in an Offense Punishable Under Section 924(c) and Aiding and Abetting in Such Offense, 18 U.S.C. § 924(j) and (2). (ECF No. 227, PageID.791–92.) Defendant's role in the kidnapping and murder at issue is not realistically contested. The

---

[1] In addition to a reply (ECF No. 349), Defendant also submitted a "letter" to the court (ECF No. 348). Both documents have been considered by the court in reaching its decision.

victim, Antonio Brown, was lured to a meeting location under false pretenses where he was beaten, robbed, bound, and kidnapped. (Id. at PageID.793–98.) At an even more remote building he was shot and killed. (Id). Feigning cooperation, Defendant lied to investigators in identifying another conspirator as the trigger man, but eventually admitted his falsehoods. (ECF No. 324, PageID.1954–56.) For his role in these brutal events, Defendant was sentenced to concurrent incarceratory terms of 240 months on Count 1 and 408 months on Count 2 and, upon release from imprisonment, to concurrent terms of supervised release of three years on both counts. (ECF No. 264, PageID.966.) His current projected date of release is January 10, 2035.

In his motion filed on April 21, 2023, Defendant argues that his "youth at the time of the offense, the moral character he has developed over the intervening 17 years, his extraordinary rehabilitation, the severity of his sentence, [and] the excessive length of the sentence he has served," combined with the public health crisis presented by the Coronavirus Disease ("Covid-19") while incarcerated, constitute extraordinary and compelling circumstances justifying his immediate release. (ECF No. 343, PageID.1983.) Though acknowledging that Defendant has exhausted his administrative remedies, the Government opposes Defendant's motion, maintaining that he fails to demonstrate both that an extraordinary and compelling reason permitting relief exists and that the relevant sentencing factors justify his release. (ECF No. 346, PageID.2056–57, 2061.)

## II. STANDARD

The federal compassionate release statute has "three substantive requirements." *United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021). First, the court may

2

reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Second, the sentencing factors provided under 18 U.S.C. § 3553(a) must weigh in favor of a sentence reduction. Third, a sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* When a prisoner moves for compassionate release himself, as in this case, there is no applicable policy statement issued by the Sentencing Commission, and the third requirement is ignored. *United States v. Jones*, 980 F.3d 1098, 1110-11 (6th Cir. 2020); *United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2021). Nevertheless, to obtain compassionate release, a prisoner must present "extraordinary and compelling" circumstances and must have § 3553(a)'s sentencing factors weighing in his favor. 18 U.S.C. § 3582(c)(1)(A); see *Jones*, 980 F.3d at 1108, 1111 (holding that a court has "full discretion to define 'extraordinary and compelling'" and must "determine whether, in its discretion, [a] reduction . . . is warranted" under § 3553(a)).

### III. DISCUSSION

The Government concedes that Defendant has satisfied the administrative exhaustion requirement by first seeking compassionate release through the Bureau of Prisons ("BOP"). (ECF No. 346, PageID.2061.) The court will therefore proceed directly to its analysis of Defendant's proposed extraordinary and compelling reasons purportedly justifying his early release.

#### A. Extraordinary and Compelling Reasons

Are Defendant's circumstances either "extraordinary" or "compelling?" 18 U.S.C. § 3582(c)(1)(A). "[W]hen Congress enacted the statute in 1984, 'extraordinary' was

3

understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021), *cert. denied,* 142 S. Ct. 2771 (2022) (citing Webster's Third New International Dictionary: Unabridged 807 (1971)). Meanwhile, "'[c]ompelling' meant 'forcing, impelling, driving.'" *Id.* Here, Defendant cites three kinds of factors that he argues justify release: (1) his youth at the time of the murder and the disproportionate severity of his sentence length in light of his youth; (2) his extraordinary rehabilitation and, a subset of rehabilitation, becoming a model prisoner; and (3) the restricted living conditions he experienced under threat of Covid-19. (ECF No. 343, PageID.1983.) These, he argues, are extraordinary and compelling reasons justifying compassionate release. (Id.) The court disagrees.

### 1. Youth

Defendant spends the bulk of his motion discussing his youth at the time of the offense, asserting that his "sentence of life imprisonment[][2] at the age of 19 years old is and was extraordinary." (ECF No. 343, PageID.1984.) Somewhat creatively, Defendant relies on a recent neuroscience study to argue that *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012), are "wrong as a matter of science and social norms" to limit their considerations to those eighteen years old and younger. (Id. at PageID.1984–2009.) Rather, as recognized by comparative state laws restricting the sale of alcohol, marijuana, tobacco, guns, and rental cars based on age, Defendant contends that the principles espoused in

---

[2] Throughout his motion Defendant incorrectly indicates that he was sentenced to a life term of imprisonment while also correctly acknowledging at times that he was sentenced to a 34-year term of imprisonment. (*See* ECF No. 343, PageID.1984, 2001.)

4

*Roper*, *Graham*, and *Miller* regarding diminished culpability for criminal youths due to their adolescent brain development should extend to twenty-one-year-old offenders. (Id.) In further support, he cites to non-binding caselaw[3] where life term sentences were reduced under the compassionate release rubric for defendants who committed similar criminal offenses to Defendant's also at a young age. (Id. at PageID.2002–09.)

In response, the Government relies on *United States v. Hunter*, 12 F.4th 555, 569–72 (6th Cir. 2021), to counter that the court is precluded from taking facts known at sentencing—like Defendant's age—and repackaging them as extraordinary and compelling. (ECF No. 346, PageID.2062.) The Government reminds the court that Defendant specifically asked the court to consider his age during his sentencing. (Id. at PageID.2062–63.) Because the facts at bar align themselves with *Hunter*, the Government contends that Defendant cannot present his youth as a basis for compassionate release. (Id.)

Defendant has cited to a host of non-binding cases that all differ from Defendant's situation in at least one critical aspect: the other youthful defendants initially received terms of life imprisonment. Here, the court imposed a thirty-four-year sentence, which Defendant mistakenly portrays at times as life imprisonment. It is not even approaching "life." Assuming he maintains good behavior, the defendant will, in the ordinary course of events, receive fifty-four days of "good time" for each year of incarceration. That good time will accumulate to about five years, resulting in the

---

[3] *United States v. Ramsay*, 538 F. Supp. 3d 407 (S.D.N.Y. 2021); *United States v. Rengifo*, 569 F. Supp. 3d 180 (S.D.N.Y. 2021); *United States v. Glynn*, No. 06-cr-580, 2022 WL 562652 (S.D.N.Y. Feb. 24, 2022); *United States v. Espino*, 03-20051-08, 2022 WL 4465096 (D. Kan. Sept. 26, 2022); *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021); *United States v. Lara*, --- F. Supp. 3d ----, 2023 WL 2305938 (D.R.I. 2023).

functional equivalent of a sentence of twenty-nine years. A well-behaved, nineteen-year-old defendant would in this way be expected to be released by about age forty-eight or earlier. Long, but hardly a life-ending incarceration.

Perhaps more importantly, the court was well aware that Defendant was nineteen years old when he committed his crimes and twenty-four years old at sentencing. As such, the court finds *Hunter* dispositive on this issue. The *Hunter* court unequivocally explained:

> The district court erred in its approach by labeling the facts that existed at sentencing "extraordinary and compelling." As noted, in applying *Booker* retroactively, the district court reasoned that Hunter was "deprived of a number of very significant arguments" at sentencing by virtue of being sentenced pre-*Booker*, namely, that Hunter "could have pointed to, among other things, his difficult childhood, his relative youth and ... the sentencing disparities between [Hunter and] his co-defendants," as factors for Judge Taylor to take into consideration under 18 U.S.C. § 3553(a). The court then took Hunter's age at the time of the murder and "the sentencing disparities between [Hunter and] his co-defendants"—facts that existed at sentencing—and used those as factors to find "extraordinary and compelling reasons" for a sentence reduction. And then the court considered those same factors to conduct the § 3553(a) analysis that Judge Taylor could not in a pre-*Booker* sentencing. *See* § 3553(a)(1), (6); *cf. Booker*, 543 U.S. at 259-60, 125 S.Ct. 738; *Peugh v. United States*, 569 U.S. 530, 536, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013). This approach nullifies the extraordinary-and-compelling-reasons requirement and transforms § 3582(c)(1)(A) into an unbounded resentencing statute.
>
> The district court's reliance on scientific articles does not change the result. In concluding that Hunter was in his "relative youth" (at almost twenty-four years of age) when he murdered Johnson and that this factor supported a finding of "extraordinary and compelling reasons," the court reasoned that the professional and academic articles cited by defense counsel suggested that "brain development is not complete up until the mid-20s which can be up to age 25" and that "brain development can be inhibited and slowed by extensive alcohol and drug use." While the court acknowledged that Hunter's age was "toward the higher end of relative youth," after noting Hunter's use of marijuana since age 13 and alcohol since age 16, the court surmised that "it is reasonable to regard his brain as still in [the] relative youthful stage" at the time he committed the

6

> murder. But that reasoning makes § 3582(c)'s general rule of finality illusory.
>
> The facts at sentencing are taken as given because "the notion of legality must at some point include the assignment of final competence to determine legality." *Teague*, 489 U.S. at 309, 109 S.Ct. 1060; *see also McCleskey v. Zant*, 499 U.S. 467, 492, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) ("A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude" is a system that "no longer reflects humane concern but merely anxiety and a desire for immobility." (citation omitted)). Hunter was not a minor at the time of his offense, so his life sentence was legally valid. *See Jones v. Mississippi*, ─── U.S. ───, 141 S. Ct. 1307, 1317, 209 L.Ed.2d 390 (2021). But there will always be a new academic article a defendant can marshal to recharacterize their background and the facts of the offense, and there is no limit on the number of successive motions a defendant can file under § 3582(c)(1)(A). That novel approach offers no principled limit on when a court may find an extraordinary and compelling reason to reduce an already-final sentence.

12 F.4th at 570–71. Thus, even despite society's evolving understanding of the adolescent brain, the Sixth Circuit has made clear that facts known at sentencing, including age, cannot later be used to support a motion under 18 U.S.C. § 3582(c)(1)(A). Like Hunter's, Defendant's youth cannot constitute an extraordinary and compelling reason. For the same reasons, Defendant's "medical issues" related to being "shot 11 times *prior* to his imprisonment," which has caused him to "live in pain" over the years, are deficient bases for early release. (ECF No. 343, PageID.2009) (emphasis added). Indeed, the court specifically acknowledged at sentencing that Defendant was shot a number of times, albeit in the context of discussing the likelihood of retaliation for Defendant's crimes and the fact that violent retaliation did occur for the death of Antonio Brown. (ECF No. 342, PageID.1973.)[4]

---

[4] However, even if the court could consider Defendant's youth and medical conditions, these reasons would not satisfy the extraordinary compassionate release standard. Despite having the ability to do so, the court did not give Defendant a life sentence,

7

### 2. Rehabilitation

Defendant also contends that his "extraordinary rehabilitation" merits a reduction in sentence because his capacity to change was not measurable at sentencing. (ECF No. 343, PageID.1983; ECF No. 349, PageID.2078.) As evidence of the "exceptional strides [made] in bettering himself," Defendant points to the completion of several prison programs and his work record while incarcerated. (Id. at PageID.1985, 2020–21, 2030, 2038–49.) He maintains that he is not the same person as he was at the age of nineteen (ECF No. 348, PageID.2071), and has instead done "everything possible" in the last seventeen years to improve himself (ECF No. 349, PageID.2078).

In response, the Government does not strongly contest Defendant's rehabilitation efforts. (ECF No. 346, PageID.2063.) Rather, it relies on 28 U.S.C. § 994(t) and *United States v. McKinnie*, 24 F.4th 583 (6th Cir. 2022), to argue that rehabilitation alone does not present extraordinary and compelling circumstances warranting a reduced sentence. (Id.) Because Defendant cannot rely on his youth, the Government asserts his rehabilitation record gets him no further to compassionate release. (Id.)

Defendant has done well in custody, he claims. He has completed a fair number of programs, worked consistently, and even apparently become a published author. (ECF No. 343, PageID.2020–21, 2026–29.) However, this progress is ultimately only that which was expected of him. Improvement of self and change in former attitudes,

---

effective or otherwise. Rather, the court specifically indicated that it did not view Defendant as a "lost cause," recognizing instead that his behavior was part and parcel of a "seemingly ever escalating culture of violence, retaliation, of course driven by the drug trade and territoriality, and the mindset of immature but large [sic] dangerous young men who have . . . not experienced any sort of moral infusion." (ECF No. 343, PageID.1973–74.) Given the court's marking of youth as a driver of Defendant's decidedly losing track, his present youth argument loses its bite.

8

while admirable, do not alone provide a basis for finding a of *extraordinary* behavior. *Hunter*, 12 F.4th at 572; *McKinnie*, 24 F.4th at 588. Given the court's finding already that Defendant's youth at the time of his crimes does not constitute compelling and extraordinary circumstances, Defendant's rehabilitation is facially insufficient to merit compassionate release. *Id.*

### 3. Covid-19's Effect on Imprisonment Conditions

Finally, Defendant argues that the court can consider as extraordinary and compelling the harsher conditions of confinement that he experienced as a prisoner within BOP under Covid-19. (ECF No. 343, PageID.2010.) He contends that the lockdown measures employed by the BOP to reduce the risk of Covid-19 infection rendered two and a half years of his sentence significantly more punitive than it otherwise would have been. (Id.) More specifically, Defendant asserts the lockdowns prevented him from seeing his family, having any meaningful social contact, and physically moving around his facility, while also clarifying that he has only had two visits from immediate family in his seventeen years of incarceration. (Id. at PageID.2010–11.)

In response, the Government challenges the logic of Defendant's argument, contending that every inmate at least in Defendant's correctional institution would be eligible for compassionate release if they were incarcerated during the Covid-19 pandemic. (ECF No. 346, PageID.2064.) The Government views these ubiquitous living restrictions, which affected incarcerated and non-incarcerated individuals alike, as an "obvious contradiction" to the "extraordinary" demands of § 3582(c)(1)(A). (Id.)

Defendant's argument strikes the court as rather novel. Typically, defendants seeking compassionate release on the basis of Covid-19 allege medical conditions that

9

are significantly complicated by the virus with the potential for death. Defendant makes a vague reference to medical issues caused by being shot eleven times prior to his imprisonment but makes no effort to link the exacerbation of these issues with Covid-19. Given the Sixth Circuit's holding that, in the context of serious medical conditions, "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction," *United States v. Lemons*, 15 F.4th 747 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)), this court is hard-pressed to find that restricted movement alone—in an institutional setting purposely designed to restrict the movement of its inhabitants—could be an independent reason on the magnitude of the extraordinary. Nor would the outcome change if the court were to take Defendant's reasons in concert. *Lemons*, 15 F.4th at 747 ("[T]he combination of grounds for release, none of which independently supports a sentence reduction, does not collectively 'entitle a defendant to a sentence reduction.'" (quoting *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021))).

In summary, there are no extraordinary circumstances presented in any of Defendant's arguments. Accordingly, reasons do not exist to warrant granting Defendant compassionate release from prison or a reduction of sentence.

### B. § 3553(a) Sentencing Factors

Given the court's finding with respect to the lack of extraordinary and compelling reasons warranting release, the court need not specifically address the sentencing factors under 18 U.S.C. § 3553(a). However, the record is clear that in imposing sentence, the court received the arguments addressing the 3553 factors, and that the

court detailed its reasoning based on these factors leading to the imposed sentence. (ECF No. 342, PageID.1972–76.) In particular, the court discussed at length Defendant's sentence in comparison to that of his co-conspirators and why "he should not receive a sentence that is equivalent or near the shooter, the actual murderer, Young, who received a sentence of 60 years, or the principal orchestrater, Williams, yet to be sentenced." (Id. at PageID.1966–67.) The court further highlighted that it was Defendant's own obstructive behavior, that is, initially lying to the Government regarding the identity of the trigger-man, that cost him a substantial sentence reduction. (Id. at PageID.1958–62, 1976.) Finally, the horrific nature of Defendant's crimes—where a man was handcuffed, beaten with a baseball bat, tortured, insulted, and ultimately murdered—were not overstated by the court. (Id. at PageID.1972–73.) At this juncture, even if the court were to engage with § 3553(a)'s factors again, Defendant presents nothing truly new or unusual for the court's consideration. Defendant's request for compassionate release and early discharge must be denied.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's "Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (ECF No. 343) is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: August 17, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 17, 2023, by electronic and/or ordinary mail.

s/Kim Grimes
Deputy Clerk

S:\Cleland\Cleland\EKL\Opinions & Orders\Criminal\06-20411.JACKSON.CompasionateRelease.EKL.2.docx